# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GOODSON,<br><br>                       Plaintiff,<br>  vs.<br><br>MICHAEL J. ASTRUE,<br><br>                      Defendant. | CASE NO. 07CV1146 BTM (WMC)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE |

Plaintiff Michael Goodson alleges that he became disabled as of February 15, 2005 due to chronic back pain. (Tr. 193) Plaintiff's application for Disability Insurance Benefits under the Social Security Act ("Act") was denied initially and on reconsideration. (Tr. 28, 35) Plaintiff filed a request for hearing and testified at the hearing on July 25, 2006. (Tr. 194) The Administrative Law Judge ("ALJ") denied benefits in a decision dated August 21, 2006, concluding that Plaintiff was not disabled within the meaning of the Act. (Tr. 23) The decision of the Social Security Administration became final when the Appeals Council denied Plaintiff's request for review. (Tr. 4-6) Plaintiff then commenced this action, seeking judicial review under 42 U.S.C. § 405(g).

Plaintiff has filed a motion for summary judgment and Defendant has filed a cross-motion for summary judgment. For the reasons discussed below, Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART, Defendant's cross-motion is DENIED.

## FACTUAL BACKGROUND

Plaintiff was born on December 19, 1955. (Tr. 194) He does not have a high school level education and performed past work of providing janitorial services. (Tr. 194) Plaintiff alleges that he initially injured his back in 1974 and that the back pain has grown progressively worse ever since. (Tr. 195-196) Plaintiff's alleged disability onset date is February 15, 2005. (Tr. 193)

On March 9, 2004, Dr. John Lockie, the claimant's primary physician, examined Plaintiff. (Tr. 138) At this time, Plaintiff complained of a two week history of pain in the shoulder, arm and low back area. (Id.) Dr. Lockie noted that there was some discomfort and pain about the left shoulder with a restricted range of movement but that the neurological exam was normal. (Id.) Dr. Lockie concluded that Plaintiff had a "probable muscular/tendonitis about left shoulder upper chest" and prescribed Maxzide and a sample of Bextra. (Id.)

Approximately one year later, on March 15, 2005, Plaintiff was again examined by Dr. Lockie. (Tr. 140) Dr. Lockie noted complaints of persistent lower back pain, tenderness and spasms but "no significant radiation or radiculopathy type symptoms." (Id.) At this time, Dr. Lockie ordered x-rays and prescribed Medrol and Vicodin. (Id.)

On May 4, 2005, Plaintiff underwent a x-ray examination that showed that he had a normal lumbar spine. (Tr. 143) On the same date, it appears that a SSA doctor contacted Dr. Lockie regarding Plaintiff's ability to work. (Tr. 144) Dr. Lockie noted that Plaintiff visited him once after a hiatus of one year and looked unable to work during that visit but that "[b]ased on the one visit, it is not clear what his status for workability is." (Id.)

On May 6, 2005, Dr. Lockie again examined Plaintiff and noted "continued significant disability – sleep disturbance & no position is comfortable. No radiculopathy or radiation." The doctor also noted pain with extension of the back and a spine that was a "bit tender." Dr. Lockie gave Plaintiff a sample of Celebrex. (Tr. 141)

On May 12, 2005, Plaintiff underwent an orthopedic examination with Dr. Thomas Sabourin at the request of the SSA. (Tr. 146-150) Dr. Sabourin concluded that Plaintiff

suffered from chronic lumbar strain and sprain syndrome and chronic thoracic strain and sprain syndrome. (Tr. 150) He stated that Plaintiff had back pain and had a voluntary decreased range of motion but also that Plaintiff had no radicular signs or atrophy. (Id.) Dr. Sabourin concluded that plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently and sit, stand, and walk 6 hours of a 8 hour day. (Id.)

On May 23, 2005, Dr. Kalmar, a medical consultant for the SSA, concluded that Dr. Sabourin's conclusions regarding Plaintff's functional capacity was consistent with objective findings but "considering claimant's alleged pain, lifting should be limited to 20 pounds occasionally, 10 pounds frequently." (Tr. 160) Dr. Kalmar also opined that Plaintiff's allegations of pain are partially credible and concluded that Plaintiff could "perform light work with occasional postural limitations." (Tr. 160)

An x-ray taken on December 8, 2005, concluded that there was only mild degenerative changes as alignment was normal, and tissues unremarkable. (Tr. 182)

Dr. Cardones treated Plaintiff for lower back pain on December 5, 2005 and on January 9, 2006. He prescribed several pain medications such as Hydrocodone and Oxycodone. (Tr. 183-184)

On February 2, 2006, Dr. Lockie opined that Plaintiff had "severe persistent arthritic and discogenic low back pain and [was] not fit for work for past nine months. (Tr. 180) On March 21, 2006, Dr. Lockie stated that Plaintiff "has been disabled with back pain and not fit for work since March 2004." (Tr. 181)

At the ALJ hearing, Plaintiff testified that he can only sit for 20 minutes before he has to start walking or otherwise change his position due to his back pain. (Tr. 197) Plaintiff testified that although he takes pain medications such as Hydrocodone, Vicodin and Oxycodone, they only manage his pain for about an hour. (Tr. 197) With these medications, Plaintiff is able to sit down for 40 or 50 minutes before the pain starts again. (Tr. 199) Plaintiff testified that the pain also keeps him awake all night, even with the pain relievers. (Tr. 198) Plaintiff's pain medicines make him unable to function because he "wouldn't be able to be in [his] right state of mind." (Tr. 200)

The ALJ found Plaintiff's pain allegations to be only partially credible and adopted Dr. Kalmar's conclusion of light work. (Tr. 21-22) The ALJ concluded that if Plaintiff could perform the full range of light work, he would be determined "not disabled" according to the grids, Medical Vocational Rule 202.12. (Tr.22) Because Plaintiff's additional non-exertional limitation have little or no effect on the occupational base of unskilled light work, the ALJ determined that Plaintiff was not disabled under the framework of grids. (Tr. 22)

## STANDARD OF REVIEW

The Commissioner's denial of benefits may be set aside if it is not supported by substantial evidence or is based on legal error. Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986). Substantial evidence is more than a scintilla, but less than a preponderance. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports the decision, a district court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the decision. Id. The court must uphold the decision if the evidence can reasonably support either affirming or reversing the ALJ's conclusion. Id. at 720-21.

To qualify for disability benefits, the claimant must show that a medically determinable physical or mental impairment prevents him from engaging in substantial gainful activity, and the impairment is expected to result in death or has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Reddick, 157 F.3d at 721. The claimant carries the initial burden of proving disability. 42 U.S.C. § 423(d)(5); Reddick, 157 F.3d at 721. If the claimant establishes that he is unable to do his prior work, the burden shifts to the defendant to show that the claimant can perform other substantial gainful work that exists in the national economy. Reddick, 157 F.3d at 721.

The determination of whether a claimant is disabled is governed by a five-step process as follows: (1) Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, the evaluation proceeds to step two. (2) Does the claimant have a "severe" impairment? If so, the evaluation proceeds to step three. If not, the claimant is not disabled. (3) Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, the evaluation proceeds to step four. (4) Is the claimant capable of performing past work? If so, the claimant is not disabled. If not, the evaluation proceeds to step five. (5) Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. See 20 C.F.R. § 404.1520; see also Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

**DISCUSSION**

A.  Subjective Pain Testimony

Plaintiff alleges that the ALJ erred by (1) using the grids instead of a vocational expert although Plaintiff presented with non-exertional pain limitations; and (2) failing to credit Plaintiff's testimony. The Court will first consider the credibility of Plaintiff's pain testimony.

Plaintiff contends that the ALJ's reasons for discrediting his allegations of pain were legally insufficient. Once the claimant produces evidence of an underlying impairment, the ALJ may not discredit the testimony as to the severity of the pain merely because it is unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). The ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony unless there is affirmative evidence that the claimant is malingering. Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). The ALJ also must identify what testimony is not credible and what evidence undermines the claimant's complaints. Lester, 81 F.3d at 834.

Here, the ALJ found that Plaintiff had underlying impairments of thoracic and lumbar sprain and strain syndrome with mild degenerative changes. (Tr. 20) The ALJ concluded that

although Plaintiff's condition could reasonably be expected to produce some symptoms, the Plaintiff's testimony regarding the intensity, duration and limiting effects of these symptoms were not credible.  (Tr. 21)

The ALJ gave the following reasons for not finding the Plaintiff's pain testimony credible: (1) Plaintiff's symptoms are medically managed and claimant does not report disabling side effects of medication; (2) Plaintiff has undergone minimal conservative care and has not undergone an intensive pain regimen; (3) no physician has found clinical abnormalities consistent with the level of pain alleged and the objective medical evidence such as laboratory results document a normal spine with only mild degenerative changes; and (4) objective medical evidence appears to be inconsistent with the level of debilitating pain alleged such as Plaintiff's 4/5 or 5/5 strength, the fact that he is neurologically intact, requires no assistive device for ambulation, and reports no loss of bowel or bladder function.

First, the Court finds unconvincing the ALJ's reason that the claimant's symptoms are medically managed and that claimant does not report disabling side effects of medication. To the contrary, Plaintiff testified that his medication only relieves his pain for about an hour. (Tr. 199) Plaintiff also testified that his pain medications render him mentally unable to perform normal functions such as driving. (Tr. 199-200) The ALJ's conclusion in this regard is based on a misstatement of Plaintiff's testimony.

Second, the ALJ points to the "minimal conservative care" received by Plaintiff and the fact that he did not undergo an intensive pain regimen as evidence that Plaintiff is not disabled by his pain. The Ninth Circuit has held that "evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F. 3d 742 (9th Cir. 2007) citing Johnson v. Shalala, 60 F. 3d 1428, 1434 (9th Cir. 1995) (claimant's ailments were treated with over-the-counter pain medication).  On the present state of the record, it is unclear to the Court  whether  Plaintiff's treatment was conservative and did not qualify as an intensive pain regimen.  Plaintiff was apparently prescribed pain relievers for moderate to severe levels of pain such as Vicodin, Oxycodone and  Hydrocodone.  (Tr. 140, 183-84)  Given that these drugs cannot be obtained over the

counter, can be habit forming, and cause side effects such as impairment of cognitive functioning and reactions, the Court cannot conclude without medical expertise that Plaintiff only received conservative care. It appears from the record that Plaintiff, however, was not prescribed these strong pain medications until March of 2005. (Tr. 138-140) The Court therefore accepts this reason as convincing and rejects Plaintiff's pain testimony for the time period prior to March 2005.  However, for the time period after March 2005, the Court remands this case for further development of the record regarding whether Plaintiff's treatment was conservative in light of the level of pain alleged and what type of treatment would be expected or typical given Plaintiff's pain allegations.

Third, the ALJ points to the fact that Plaintiff's subjective pain testimony is not supported by any specific clinical findings by physicians or corroborated by objective medical evidence such as laboratory testing. As set forth above, the lack of objective evidence alone is not sufficient to reject pain testimony. However, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853 (9th Cir. 2001). Here, it appears that not only is Plaintiff's pain testimony not supported by the objective evidence such as tests or specific clinical findings, but Plaintiff may exhibit physical characteristics inconsistent with someone completely disabled by pain as he alleges.   (Tr. 149) As the ALJ notes, Plaintiff did not exhibit significantly reduced strength at his examinations which showed 4/5 or 5/5 strength and  reported no loss of bowel or bladder function.[1]   It is unclear from the present record whether such strength is medically unlikely given the alleged high levels of pain and Plaintiff's alleged sedentary lifestyle consisting of sitting and occasionally changing his posture to alleviate the pain. It is also unclear whether Plaintiff's normal bladder function is medically unlikely if Plaintiff suffers high levels of back pain as alleged.  The Court

---

[1] The ALJ also notes that Plaintiff requires no ambulatory device and is neurologically intact.  The Court concludes that these indications are not necessarily inconsistent with Plaintiff's allegations of back pain and his testimony regarding his daily activities.

therefore remands to further develop the record on whether the Plaintiff exhibits physical characteristics and abilities that are medically inconsistent with his alleged levels of pain.

B.  Application of the Grids

Plaintiff also alleges that the ALJ erred in applying the Grids as opposed to obtaining the testimony of a vocational expert.  The Ninth Circuit in Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007) held that:

> When the grids match the claimant's qualifications, "the guidelines direct a conclusion as to whether work exists that the claimant could perform." . . . When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, . . . or (2) rely on a vocational expert when the claimant has significant non-exertional limitations. . . .
> The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids 'provide for the evaluation of claimants asserting both exertional and non-exertional limitations.' . . . But the grids are inapplicable [w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations.' (Citations omitted.)

Here, Plaintiff argues that his non-exertional pain limitations and his postural limitations are not accounted for in the grids.  As set forth above, a vocational expert is required only when significant and severe exertional limitations are not accounted for in the grids.  Whether the ALJ erred in using the grids will depend on the significance and severity of Plaintiff's pain and whether Plaintiff's pain levels were accounted for in the application of the grids. The Court therefore remands for a determination on whether to apply the grids after further developing the record regarding the credibility of Plaintiff's pain testimony.

Plaintiff's motion for summary judgment [Doc. 15] is GRANTED IN PART AND DENIED IN PART.  Defendant's cross motion for summary judgment [Doc. 20] is DENIED.

//

//

This case is REMANDED to the Commissioner for further proceedings.

IT IS SO ORDERED.

DATED:  September 26, 2008

*[signature: Barry Ted Moskowitz]*

Honorable Barry Ted Moskowitz
United States District Judge